WASTE MANAGEMENT OF ILLINOIS, INC., Petitioner-Appellant and Cross-Appellee, v. THE POLLUTION CONTROL BOARD, Respondent-Appellee (McHenry County Board *et al.*, Respondents-Appellees and Cross-Appellants).

Second District   No. 2—87—0029

Opinion filed September 11, 1987.

Pedersen & Houpt, and Nancy M. Kollar and James Russell, both of Winston & Strawn, both of Chicago, and Daniel F. Curran, of Holmstrom & Green, of Crystal Lake (Donald J. Moran and Calvin P. Sawyier, of counsel), for appellant.

Neil F. Hartigan, Attorney General, and Wayne Wiemerslage, of Illinois Environmental Protection Agency, both of Springfield, and Dorothy M. Gunn, of Pollution Control Board, of Chicago (Roma Jones Stewart, Solicitor General, and Michael J. Maher and H. Alfred Ryan, Assistant Attorneys General, of Chicago, of counsel), for appellee Pollution Control Board.

Thomas F. Baker, State's Attorney, of Woodstock (Paul R. Ryske and William F. Barrett, Assistant State's Attorneys, and David Akemann, of counsel), for appellee McHenry County Board.

Michael F. Kukla, of Cowlin, Ungvarsky, Kukla & Curran, of Crystal Lake, for other appellees.

JUSTICE DUNN delivered the opinion of the court:

Waste Management of Illinois, Inc., petitioned the McHenry County board, pursuant to section 39.2 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2), for site location suitability approval of a new regional pollution control facility in unincorporated McHenry County. After 20 days of hearings comprising an approximately 4,000-page record, the county board denied the application. The county board's decision was upheld on review by the Illinois Pollution Control Board (PCB). (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).) Waste Management filed a timely petition for judicial review (Ill. Rev. Stat. 1985, ch. 111½, par. 1041), requesting that we reverse the decision of the PCB. The McHenry County board, and the McHenry County concerned citizens and McHenry County defenders (hereinafter referred to as objectors) filed cross-appeals challenging particular portions of the PCB's decision.

A brief review of the pertinent sections of the Act is appropriate in order to put into context the issues raised by the parties. Section 39(c) of the Act provides that "no permit for the development or construction of a new regional pollution control facility may be granted by the [Environmental Protection] Agency unless the applicant submits proof to the Agency that the location of said facility has been approved by the County Board of the county if in an unincorporated area *** in accordance with Section 39.2 of this Act." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(c)). At the time this proceeding was before the McHenry County board, section 39.2 provided in pertinent part:

"(a) The county board *** shall approve the site location suitability for such new regional pollution control facility only in accordance with the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility is designed to mini-

mize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows ***."
(Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).)

The county board found that Waste Management had satisfied criteria (i), (iv), (v) and (vi), but had failed to satisfy criteria (ii) and (iii). The request for location approval was therefore denied. Waste Management then petitioned for a hearing before the PCB to contest the decision of the county board as provided for in section 40.1(a) of the Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).) The objectors cross-appealed, seeking review of the county board's findings on criteria (i), (iv), (v) and (vi). The pertinent portion of section 40.1(a) provides:

"The county board *** shall appear as respondent in such hearing, and such hearing shall be based exclusively on the record before the county board ***. *** [N]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the appropriate county board *** shall be heard by the [Pollution Control] Board. In making its orders and determinations under this Section, the Board shall include in its consideration the written decision and reasons for the decision of the county board ***, the transcribed record of the hearing held [before the county board], and the fundamental fairness of the procedures used by the county board ***."
(Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).)

On review, the PCB determined the county board's finding against Waste Management on criterion (iii) (compatibility) was against the manifest weight of the evidence. The PCB sustained the county board's findings on the remaining criteria. The PCB also found the procedures used by the county board were fundamentally fair. Therefore, the PCB upheld the county board's denial of Waste Management's site location petition because the proposal failed to satisfy criterion (ii) (public health, safety and welfare).

On administrative review before this court, Waste Management raises the following issues: (1) whether section 39.2(a) of the Act confers on the county board the authority to consider highly technical details of landfill design and construction; (2) whether in reviewing the county board's finding that the proposed landfill facility did not meet the public health, safety and welfare criterion, the PCB erred and abdicated its administrative function by giving presumptive validity to the county board's finding rather than applying its expertise in this

technical area and resolving the conflicts in the expert testimony on its own; (3) whether all six criteria listed in section 39.2(a) of the Act need be satisfied in order for site location suitability approval to issue; and (4) whether the PCB erred in finding there was fundamental fairness in the decision-making process of the county board. On cross-appeal, the McHenry County board contends the PCB erred in determining that the county board's finding on the compatibility criteria was against the manifest weight of the evidence. The objectors' cross-appeal raises the same issue and also contests the PCB's decision to uphold the county board's findings on criteria (i), (v) and (vi).

In view of our resolution of the issues raised by the parties, we need not elaborate on the evidence presented at the county board hearing.

I

■■ Waste Management first contends that section 39.2 of the Act does not confer on the county board the authority to determine highly technical details of landfill design and construction. Waste Management claims these matters are outside the realm of expertise of a county board and should be left to the discretion of the PCB. We disagree. Section 39.2 grants to the county board the power to determine whether the proposed location for a sanitary landfill meets the six criteria established by the legislature. Included among the six criteria governing site location suitability is:

> "(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(ii).)

We believe this provision clearly and unambiguously provides that the county board is empowered to consider all the public health, safety and welfare ramifications surrounding the design, location and operation of the proposed facility. Adopting Waste Management's position would vitiate the fact-finding authority granted to the county board in criterion (ii) because technical information of varying degrees must be addressed in order for the local authority to assess the effect the proposed facility will have on the public health, safety and welfare. Consequently, we are not persuaded that the legislature intended to limit the public safety criterion in the manner suggested by Waste Management. Rather, we conclude that the county board does have the authority to consider any and all of the technical details associated with the landfill siting decision.

Our conclusion is consistent with the reported decisions directly addressing this question or otherwise alluding to it. *County of Lake v.*

*Pollution Control Board* (1983), 120 Ill. App. 3d 89, 97-99, 457 N.E.2d 1309; see *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 101, 506 N.E.2d 372; *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 592, 487 N.E.2d 743; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 1091, 463 N.E.2d 969; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639, 645, 461 N.E.2d 542.

In *County of Lake*, the issue was raised in the context of a county board's power to impose technical conditions on site location suitability approval. Section 39.2(e) provides "[i]n granting approval for a site the county board *** may impose such conditions as may be reasonable and necessary to accomplish the purposes of this Section ***." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(e).) In *County of Lake*, the county board granted site location approval to petitioner subject to 25 conditions. On review, the PCB struck several of the conditions, determining that the county board did not have the authority under section 39.2 to impose technical conditions on siting approval. This court, relying on the unambiguous language in criteria (ii) and (v) of section 39.2(a) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(ii), (v)), determined that local authorities can take into consideration the technical details relating to the design and operation of a landfill. We concluded that since section 39.2(e) permits local governmental units to impose conditions to accomplish the purposes of section 39.2, the local authorities had the power to impose "technical" conditions on siting approval. *County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 99, 457 N.E.2d 1309.

Waste Management acknowledges the above-mentioned cases are contrary to its position, but maintains they should not be relied on because in each of those cases the discussion or reference to the question before us was predicated on *City of East Peoria v. Pollution Control Board* (1983), 117 Ill. App. 3d 673, 678-79, 452 N.E.2d 1378, which was subsequently vacated on mootness grounds by the supreme court. (*City of Rockford v. Pollution Control Board* (1984), 125 Ill. App. 3d 384, 386 n.1, 465 N.E.2d 996.) We do not subscribe to this theory because the opinion in *City of East Peoria* was not vacated on its merits. Moreover, we have determined independently that the conclusion reached in the cases mentioned is, in our opinion, the correct one. Waste Management's corollary assertion that the reasoning in *City of East Peoria* was expressly repudiated in *Environmental Protection Agency v. Pollution Control Board* (1985), 138 Ill. App. 3d 550, 552, 486 N.E.2d 293, is unfounded. There, the court was ad-

dressing the PCB's standard of review of an environmental protection agency (EPA) decision denying a permit under section 39 of the Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.) The court rejected the analysis in *City of East Peoria* insofar as it related to the PCB's standard of review of EPA permit rulings. The distinction between the PCB's review of a county board decision on site approval and an EPA decision on a permit application was expressly recognized by our supreme court. (*Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 69-70, 503 N.E.2d 343.) Therefore, Waste Management's reliance on the appellate court opinion in *Environmental Protection Agency v. Pollution Control Board* is misplaced.

Waste Management's reliance on certain language in *M.I.G. Investments, Inc. v. Environmental Protection Agency* (1986), 151 Ill. App. 3d 488, 494, 502 N.E.2d 1042, is also misplaced. In *M.I.G. Investments*, this court found that the vertical expansion of an existing landfill did not concern questions of location, and therefore local board approval was not required. *M.I.G. Investments* is therefore inapposite and unsupportive of Waste Management's argument. Finally, since we have determined the language here to be clear and unambiguous, we need not consider the interpretative aids propounded by Waste Management.

## II

■ Waste Management's next argument seeks a modification of the manifest weight of the evidence standard applicable to PCB review of county board findings on site location suitability. (*City of Rockford v. Pollution Control Board* (1984), 125 Ill. App. 3d 384, 386, 465 N.E.2d 996.) Specifically, Waste Management contends the PCB should be allowed more discretion in its review of the county board's finding on the public health, safety and welfare criterion on account of the PCB's "informed knowledge and technical expertise" on subsurface uses. Waste Management proposes that some type of intermediate standard, somewhere between a typical manifest weight analysis and a *de novo* review, be adopted in order to incorporate the technical expertise of the PCB. Otherwise, Waste Management asserts that PCB review of the public health criterion amounts to nothing more than rubber stamp approval of the county board's finding.

In light of our finding that the county board has the authority to consider technical evidence pertinent to the public health criterion, we decline to adopt the novel standard of review proposed by Waste Management. As stated, section 39.2(a) of the Act grants to local authorities the quasi-adjudicative function of determining whether the pro-

posed landfill meets the six site location suitability criteria established by the legislature. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).) The county board must hold at least one public hearing, with the attendant due process safeguards, which must be transcribed. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(d).) The county board must give reasons for its decision which, together with the record of the public hearing, provide the basis for any appeal of the decision to the PCB. (Ill. Rev. Stat. 1985, ch. 111½, pars. 1039.2(d), (e), 1040.1(a).) On review, the PCB is precluded from considering any new or additional evidence. Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).

The judicially established standard of review applicable to PCB review of county board site location suitability decisions, *i.e.*, manifest weight of the evidence, is consistent with the legislative intent to grant local authorities the power to determine the site location suitability of a proposed new regional pollution control facility. (*E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 608, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664 (manifest weight standard of review would give county board's findings the respect customarily accorded fact findings of administrative agencies).) Modifying the standard of review as requested by Waste Management would effectively transfer the fact-finding determination on public health, safety and welfare to the PCB in contravention of the clear directive of the Act. Furthermore, it seems clear to us that the PCB's technical expertise and informed knowledge is relied on in its review of county board findings involving technical matters. Indeed, in the instant case, the PCB set out a lengthy summary of the expert witness testimony, pointing out the contentions of each side. Thereafter, the PCB analyzed the conflicting contentions and concluded that the county board's finding on the public health criterion was not against the manifest weight of the evidence. Contrary to Waste Management's assertions, we do not believe that PCB review of county board findings is mere rubber stamp approval. In this regard, we note that the PCB reversed the county board's finding on the compatibility criterion. In addition, there are several reported decisions where the PCB has reversed findings made by a county board. *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 93, 506 N.E.2d 372; *City of Rockford v. Pollution Control Board* (1984), 125 Ill. App. 3d 384, 385, 465 N.E.2d 996; *E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 589, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.

In sum, we believe the manifest weight of the evidence standard

of review should be applied by the PCB to each and every criterion. We reject Waste Management's argument to the contrary because we find it inconsistent with the clear mandate of the Act in that it unjustifiably usurps power conferred on the county board.

### III

■ Waste Management next contends that all six criteria in section 39.2(a) need not be satisfied in order for site location suitability approval to issue. Instead, Waste Management asserts the PCB should make a single overall decision balancing the relative weight of the factors listed. Waste Management concludes that if such a standard were invoked, site approval should issue here because the PCB found that five of the six criteria were met and the final criterion, public health, safety and welfare, was closely balanced.

Although this precise question has not previously been addressed on judicial review, we believe the clear language of the statute and the language found in cases addressing section 39.2(a) undermine Waste Management's argument. Section 39.2(a) provides in pertinent part:

"(a) The county board *** *shall* approve the site location suitability for such new regional pollution control facility *only* in accordance with the following criteria:

(i) the facility *is* necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility *is* so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility *is* located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility *is* located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility *is* designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility *are* so designed as to minimize the impact on existing traffic flows ***." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).)

We believe the mandatory and restrictive language emphasized above demonstrates a clear legislative intent that each and every one of the six criteria must be satisfied. Had the legislature desired the county board or the PCB to base their decisions on a balancing of the six factors, corresponding language, such as "may" or "include," would have been used. Since such language was not used, we decline to subscribe to Waste Management's argument.

Support for our decision is indicated in *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 43, 481 N.E.2d 664, wherein our supreme court, in discussing the amending of the Act to vest in the county board the power to approve site location suitability, stated: "The board was required to find that the six standards for approval under the amended act were satisfied." In addition, in *Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 123, 472 N.E.2d 150, the court stated: "Section 39.2 of the Act conditions such approval on six separate criteria which must be met by one seeking approval from the local hearing authority." The court went on to consider the only criterion in question. Although these cases do not specifically address the issue before us, the language quoted lends support to our conclusion that all six criteria must be satisfied in order for site location suitability approval to issue.

### IV

■ Waste Management lastly contends the proceedings before the county board were fundamentally unfair on account of the McHenry County board's bias against approving a site for a new regional pollution control facility. As support, Waste Management relies on three specific factors: (1) the board's denial of its requests to amend the application after the proceedings had begun; (2) the board's denial of two previous site location suitability requests; and (3) a board member's comment in a newspaper article that was not made part of the record on appeal. Waste Management, however, has failed to cite any authority in support of this contention in violation of Supreme Court Rule 341(e)(7). (107 Ill. 2d R. 341(e)(7).) Therefore, the argument is waived. *Associated Investment Corp. v. Laidlaw Waste Systems, Inc.* (1987), 152 Ill. App. 3d 279, 291, 503 N.E.2d 1153.

### V

■ The McHenry County board's cross-appeal, which challenges the PCB's reversal of the board's compatibility finding, need not be addressed in view of our decision affirming the PCB's denial of site location suitability approval. As to the cross-appeal filed by the objec-

tors, it must be dismissed in view of our recent decision in *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 506 N.E.2d 372. In *McHenry County Landfill*, we determined that following a county board denial of a site approval request, section 40.1 of the Act precludes objectors from becoming parties to a PCB review hearing. Therefore, objectors do not have standing to appeal to this court under such circumstances. 154 Ill. App. 3d 89, 94-95, 506 N.E.2d 372; Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1; see *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 41, 481 N.E.2d 664.

For the foregoing reasons, the decision of the PCB is affirmed.

Affirmed.

HOPF and NASH, JJ., concur.